Joel LEVITT, Plaintiff–Appellant,

v.

**CALVARY TEMPLE OF DENVER, a Colorado nonprofit corporation, Defendant–Appellee.**

No. 00CA0782.

Colorado Court of Appeals. Div IV.

April 26, 2001.

Daniel F. Lynch, Denver, CO, for Plaintiff–Appellant.

Quigley, Hibschweiler, Johnson & Ritter, LLC, William C. Ritter, Denver, CO, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this action seeking inspection of financial records, plaintiff, Joel Levitt, appeals from the trial court's entry of judgment in favor of defendant, Calvary Temple of Denver (the Church). Although we use different reasoning, we affirm.

The Church, a Colorado nonprofit corporation, has a complex financial history closely

linked to the activities of its former pastor, Charles E. Blair. A series of fundraising campaigns and financial failures in the 1970's and 1980's resulted in multiple lawsuits and extensive debt. The 1986 Second Mile Campaign, intended to pay off the remainder of the Church's unpaid creditors, resulted in further class action litigation. In 1991, that lawsuit was settled by agreement of the majority of the class members, obligating the Church to pay a $700,000 settlement. Notwithstanding this settlement, the original debt to unpaid creditors was never paid in full. In March 1999, the congregation voted not to attempt to repay any remaining unpaid creditors.

Levitt, a member of the Church from 1987 until May 24, 1999, sought to inspect and copy portions of the Church's financial records pursuant to § 7–136–102(1), C.R.S.2000, which allows a member of a nonprofit corporation a limited right to inspect and copy the corporation's records. From mid–1998 through May 14, 1999, Levitt made repeated requests for records, accumulating approximately 2400 photocopied pages in the process.

Levitt's stated purpose for his May 14, 1999, request was that, as a member of the Church, he needed "to know what has been done with church resources." Earlier, Levitt had stated various reasons for requesting records, including: to determine the financial abilities of the Church to pay creditors, to determine whether economies could be achieved to help the Church repay unpaid creditors, and to enable him to communicate with other Church members in an effort to influence Church policy on that issue.

On May 14, after receiving the request from Levitt, the Church refused to allow further inspection. On May 24, 1999, Levitt filed this action, requesting that he be allowed to inspect and copy the documents and financial records described in his May 14 letter. That evening, the Church's Board of Elders unanimously voted to rescind Levitt's membership.

At the subsequent bench trial, the Church argued, inter alia, that, because Levitt had been expelled from membership in the Church, he had no standing to request inspection and copies of its records.

In its ruling, the trial court disagreed, reasoning that Levitt had been a member of the Church at the time of his request for records. However, the court found that, because Levitt was "obsessed" with Blair, was dissatisfied that the Church's Board of Elders had decided not to reopen a fundraising campaign to repay creditors, had specious reasons for wanting the documents, and was making unreasonable requests, his request lacked the "proper purpose" and "good faith," required by § 7–136–102(3)(b), C.R.S. 2000, for the particular documents he sought.

■ On appeal, Levitt contends that the trial court's determination was both legally and factually incorrect. The Church asserts, on the other hand, that Levitt, as a nonmember, now cannot have the required "proper purpose" to make a request under § 7–136–102(3)(b). In the Church's view, Levitt's membership in the Church was a prerequisite to a cognizable request for records inspection, and so divestment of Levitt's membership also divested him of standing to pursue his request. Therefore, according to the Church, even assuming that Levitt had "good faith" and a "proper purpose" when he first made his requests, as a matter of law he no longer has any right to relief. We agree with the Church.

■ Generally, standing depends upon whether the plaintiff has suffered an actual injury and whether the injury suffered is a legally protected or cognizable interest. *See Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). When a claim is based on the provisions of a statute, standing depends on whether the provisions on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. *Stifflear v. Bristol–Myers Squibb Co.,* 931 P.2d 471 (Colo.App.1996).

■ As the Church points out, a plaintiff may lose standing and a controversy can become moot during the course of litigation. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Thus, the dispositive issue here is whether, as a nonmember of the Church, Levitt still has any right

to inspect its financial records. We hold that, in this narrow set of circumstances, he does not.

To request the records of a nonprofit corporation, a person must be a member of the organization. *See* § 7–136–102, C.R.S.2000. As a member, a person has the right to inspect and copy any records enumerated in § 7–136–101(5), C.R.S.2000, provided he or she complies with certain procedural guidelines.

■ To obtain records outside this list, such as those at issue here, the member's request carries the additional requirement of "good faith" and "a proper purpose." Section 7–136–102(3)(b). "Proper purpose" means "a purpose reasonably related to the demanding member's interest as a member." Section 7–136–102(4)(b), C.R.S.2000. Thus, to obtain records, a person must be a member with a present ability to promote the welfare of the association. *See generally* J. Zitter, Annotation, *Right of Member of Nonprofit Association or Corporation to Possession, Inspection, or Use of Membership List,* 37 A.L.R.4th 1206, 1985 WL 287324 (1985).

As the trial court noted, when Levitt made his various requests, he was a member of the Church. However, when Levitt lost that status he could not, by definition, have any "interest as a member" sufficient to afford him a proper purpose to inspect records. *See* § 7–136–102(4)(b). Specifically, as a nonmember, Levitt no longer had a member's stake in what had been done with church resources, nor any member's interest in determining church economies, nor any member's voice with which to persuade voting church members to adopt his policies. Nor, in contrast to a former corporate stockholder, did he have any residual financial stake in the entity. *Cf.* § 7–113–101, et seq., C.R.S.2000 (shareholder dissenters' rights); *Cutlip v. CBA International, Inc.,* (Del. Ch. No. 14168NC, Oct. 27, 1995), 1995 WL 694422 (not officially published) (1995 Del. Ch. LEXIS 136) (court allowed former stockholder, after corporate merger, to inspect records for the sole purpose of ascertaining the true value of his shares).

Thus, Levitt's personal good intentions aside, he is now an outsider to the Church, and any attempts to use the information contained in the Church's records for his stated purposes would be futile. Accordingly, the provisions of the statute upon which his claim is based give him no right to judicial relief. *Cf. In re Estate of Malone,* 42 Colo.App. 453, 599 P.2d 965 (1979) (removed trustee had no authority to prosecute an appeal on behalf of the estate, even though such appeal was filed before the trustee's termination); *Kehaya v. Axton,* 32 F.Supp. 266 (S.D.N.Y.1940) (because his right to sue depends on his status, director who loses his status as director is barred from maintaining a suit begun before his removal).

■ Levitt argues, however, that despite the plain language of the statute, if expulsion of a member from a nonprofit corporation could eliminate his or her ability to obtain corporate records, the statute would be meaningless. We disagree.

Ordinarily, judicial recourse is available to a member of a nonprofit organization seeking records who is subsequently expelled from membership. *See* § 7–126–302, C.R.S.2000 (providing that the termination of a member of a nonprofit corporation must be fair, reasonable, and in good faith); *Nozik v. Mentor Lagoons Yacht Club,* 112 Ohio App.3d 321, 678 N.E.2d 948 (1996).

Membership and termination of membership in a nonprofit organization are governed by statute. *See* §§ 7–126–101 to 7–126–104, 7–126–201 to 7–126–203 (members and memberships), 7–126–301 to 7–126–303 (resignation and termination), C.R.S.2000. As relevant here, termination requires a fair and reasonable procedure and an opportunity for a pretermination hearing. Moreover, the statute provides a claim for relief for improperly terminated members. *See* § 7–126–302. Thus, under typical circumstances, a person improperly expelled from membership in a nonprofit corporation may gain reinstatement and, assuming the other statutory requirements are met, access to the organization's records.

However, when the nonprofit corporation is a church, such as here, the situation is different. *See Bourgeois v. Landrum,* 396 So.2d 1275 (La.1981) (court's role in enforcing a voting member's right to inspect the

records of a nonprofit church corporation is severely circumscribed). Here, the Board of Elders elected by the congregation is the highest Church judicature and, as the parties agree, a civil court simply has no authority to reverse its decision, no matter how arbitrary or unfair, to expel Levitt or any other member. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *cf. Fowler v. Bailey,* 844 P.2d 141 (Okla.1992). Thus, under the particular circumstances here, Levitt has no recourse.

In sum, the Church's decision to expel Levitt is nonreviewable, and reinstatement of Levitt's membership would be exclusively the Church's decision. Without membership in the Church, Levitt can no longer have a proper purpose reasonably related to his interest as a member. Thus, he no longer has standing to inspect the Church's financial records under § 7–136–102.

Based on the foregoing, we need not address the remaining issues raised by Levitt.

The judgment is affirmed.

RULAND and KAPELKE, Judges, concur.