[Cite as *Rutkowski v. United States Practical Shooting Assn.*, 2025-Ohio-2182.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEPH W. RUTKOWSKI JR., | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellant | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| UNITED STATES PRACTICAL | : | Case No. 2024 CA 00119 |
| SHOOTING ASSOCIATION / IPSC, | : | |
| et al., | : | |
| | : | |
| | : | |
| Defendants - Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
                                 of Common Pleas,
                                 Case No. 2023 CV 01625




JUDGMENT:                        Reversed and Remanded




DATE OF JUDGMENT:                June 20, 2025




APPEARANCES:

For Plaintiff-Appellant

Edmond J. Mack
Mack Law Co., LPA
P.O. Box 8276
Canton, Ohio 44711

For Defendants-Appellees

Marcus L. Wainwright
Madeline G. Connolly
Krugliak, Wilkins, Griffiths &
Dougherty Co., L.P.A.
4775 Munson Street, N.W./P.O. Box 36963
Canton, Ohio 44735-6963

*Gormley, J.*

**{¶1}** Plaintiff Joseph W. Rutkowski Jr. appeals a judgment of the Stark County Court of Common Pleas, which granted a motion to dismiss his lawsuit against the United States Practical Shooting Association (the "USPSA") and that organization's board members: Sherwyn K. Greenfield, Bruce G. Gary, Leighton A. Oosthuisen, Kevin M. Collins, Chad W. Stanton, Richard K. Steele, M. Bruce Wells, Leonard C. Cabana, and John E. Murphy (collectively, the "Board"). Because we conclude that Rutkowski's amended complaint alleges facts that are legally sufficient to withstand a motion to dismiss and that his claim is not moot, we reverse and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

**{¶2}** Rutkowski is a firearms enthusiast who competes in the sport of practical shooting. Competitors of this sport — which is also known as dynamic shooting — race to navigate obstacle courses while shooting targets to earn points. The USPSA, a non-profit corporation, is the national governing body of practical shooting in the United States, and it publishes rules and guidelines for practical-shooting events throughout the nation.

**{¶3}** Rutkowski joined the USPSA in 2004 and started regularly attending USPSA events and competitions then. In 2009, he became a certified USPSA range officer, a role that involved officiating USPSA matches and providing firearms instruction to other USPSA members.

**{¶4}** In October 2021, the USPSA announced that it would be hosting its "2 Gun PCC/Pistol Nationals" competition in Grand Junction, Colorado in June 2022. Rutkowski,

intending to take part in that event, registered to participate as a competitor in the open division.

**{¶5}**    In 2013, Colorado banned the possession of firearm magazines that hold more than 15 rounds of ammunition.  USPSA competitors, however, typically compete with magazines that hold more than 15 rounds of ammunition.  The use of those higher-capacity magazines enables competitive shooters to finish timed events more quickly because the competitors need not reload their firearms as frequently.

**{¶6}**    As the date of the 2022 Grand Junction competition neared, Section 3.3.1 of the USPSA's competition rules stated that competitors were limited — in states (like Colorado) with magazine-capacity restrictions — to the maximum magazine capacity allowed under the law of the state where the competition was to be held.

**{¶7}**    After registering for the June 2022 Grand Junction competition, Rutkowski contacted officials at the USPSA with concerns about whether he and other competitors would be affected by the Colorado magazine-capacity law while competing in that state. He alleges that he received a response stating that the USPSA did not intend on imposing a magazine-capacity limit on competitors at the Grand Junction event because no one had been prosecuted under Colorado's law.  The USPSA's written response also noted — according to Rutkowski — that the Colorado law was only a misdemeanor and that the local sheriff whose jurisdiction included Grand Junction had expressed a lack of interest in policing violations of the law.

**{¶8}**    In May 2022, Rutkowski — hesitant to risk criminal prosecution in Colorado by using magazines capable of holding more than 15 rounds, but also concerned about the competitive disadvantage that he would encounter at the event in Grand Junction if

most other shooters would not be following the state law — raised his quandary directly with the Board, and he offered to contact the Colorado Attorney General on behalf of the USPSA to obtain a legal opinion regarding the magazine-capacity law. Rutkowski alleges that his concerns were ignored and that the Board continued to decline to impose a magazine-capacity limit on the competitors who had registered for the Grand Junction event.

{¶9} In the days leading up to the competition, a local news station in Colorado published a story about the sheriff's intention not to enforce the magazine-capacity law at the Grand Junction event. Rutkowski alleges that one of the USPSA's sponsors withdrew its sponsorship of that event after the news story aired.

{¶10} In the days following the June 2022 competition in Colorado, Rutkowski received a letter from the USPSA informing him that he had been indefinitely suspended from the organization. That letter stated that his suspension had been imposed because he had engaged in activity that had generated negative public attention for the USPSA. Rutkowski, in response, requested a factual description of the conduct that the Board believed justified his suspension, and he also asked for an in-person hearing.

{¶11} Rutkowski was informed by the Board that he would be allowed to contest his suspension at an online hearing where he would be entitled to speak to the Board for 20 minutes. Rutkowski alleges that he was denied the opportunity to have counsel represent him at that hearing, that he was not given the opportunity to ask questions, and that he was not provided with copies of the evidence that purportedly justified his suspension.

**{¶12}** The hearing was conducted on the Zoom online conferencing platform in October 2022, and the Board then reduced Rutkowski's indefinite suspension to a one-year suspension. At the end of that one-year period in October 2023, Rutkowski applied for reinstatement, and the Board approved that request the following day. Rutkowski, however, alleges that the USPSA's online eligibility list indicated that his suspension remained in effect even after he had been told that he was reinstated.

**{¶13}** Rutkowski, seeking monetary damages and injunctive relief, filed this lawsuit in Stark County alleging wrongful suspension. After Rutkowski amended his complaint once, the USPSA and the Board filed a motion to dismiss, which the trial court granted after concluding that Rutkowski's amended complaint failed to state a claim and that his lawsuit was moot. Rutkowski now appeals, raising two assignments of error.

## Rutkowski's Amended Complaint Contains Factual Allegations Sufficient to Withstand a Motion to Dismiss

**{¶14}** In his first assignment of error, Rutkowski argues that his amended complaint alleged facts that, if proven, are sufficient to support his wrongful-suspension claim.

**{¶15}** Ohio courts generally defer to disciplinary actions taken by voluntary associations. *See Putka v. First Catholic Slovak Union*, 75 Ohio App.3d 741, 748 (8th Dist. 1991) ("Generally speaking, in matters of policy, discipline or internal economy of a voluntary association, wherein the members have mutually agreed upon a charter or rules, the decision of the association itself is supreme").

**{¶16}** Ohio courts have, however, recognized exceptions to this general rule. The Supreme Court of Ohio first announced an exception in *State ex rel. Ohio High School Athletic Assn. v. Judges of Court of Common Pleas of Stark County*, 173 Ohio St. 239,

247 (1962), *abrogated on other grounds by Ohio High School Athletic Assn. v. Ruehlman*, 2019-Ohio-2845. The Court — looking to out-of-state cases and legal encyclopedias — emphasized that "'the decisions of . . . [a] voluntary society or association in disciplining[,] suspending, or expelling members are of a quasi judicial character. In such cases[,] the courts never interfere except to ascertain whether . . . the proceeding was . . . in good faith.'" *Id.*, quoting 4 Am.Jur., Associations and Clubs, § 27, at 472 (1936).

**{¶17}** Six years later, in *Lough v. Varsity Bowl, Inc.*, 16 Ohio St.2d 153, 154 (1968), the Supreme Court of Ohio again addressed whether Ohio courts could review a voluntary association's decision that was made "under the constitution and rules of the association." In that case, several bowlers were suspended from a bowling association for failing to comply with an association rule that required them to disclose their previous tournament earnings. *Id.* at 153. The bowlers were provided with a hearing, where they were represented by counsel and were given the opportunity to present evidence and cross-examine witnesses. *Id.* at 153–154. The Court concluded that Ohio courts could "not interfere with the quasi-judicial decisions of voluntary associations unless such decisions are alleged and shown to be the result of fraud, arbitrariness, or collusion." *Id.* at 154. Noting that "[n]one of such criteria . . . were effectively alleged" by the bowlers' complaint, the Court affirmed the trial court's judgment granting a motion to dismiss the bowlers' lawsuit. *Id.* at 155.

**{¶18}** Exceptions to the general rule of judicial noninterference with voluntary associations have also been addressed by Ohio's appellate courts. In *Bay v. Anderson Hills, Inc.*, 19 Ohio App.3d 136 (1st Dist. 1984), a member of "a private social, swim and recreational club" was expelled from that club after "a very unpleasant melee occurred"

at a picnic hosted on the club's grounds. The First District emphasized that "[a] member who a social association seeks to expel is entitled to due process, which requires reasonable notice and hearing with the opportunity to defend the charges." *Id.* at syllabus. Noting that the member had not been provided with notice or a hearing, the court held that that member had been wrongfully expelled from the club, and the court permitted the member to pursue damages as a remedy. *Id.* at 137.

{¶19} More recently, "due process" in the context of voluntary associations has been interpreted to consist of "'three basic elements: (1) absence of bad faith, (2) compliance with the constitution and by-laws of the association, and (3) natural justice.'" *Wedemeyer v. U.S.S. F.D.R. (CV-42) Reunion Assn.*, 2010-Ohio-1502, ¶ 32 (3d Dist.), quoting *Normali v. Cleveland Assn. of Life Underwriters*, 39 Ohio App.2d 25, 28 (8th Dist. 1974). In *Wedemeyer*, a member of a non-profit organization of "active duty, retired, and honorably discharged members of the Armed Forces who served on the U.S.S. Franklin D. Roosevelt (CV–42)" was expelled from that organization for allegedly engaging in disruptive conduct. *Id.* at ¶ 3. The Third District, noting that the member's complaint "sufficiently alleges that the association's act of expelling him was arbitrary," concluded that "the facts of this case, as alleged in the complaint, fall outside the general rule of judicial restraint." *Id.* at ¶ 33.

{¶20} Here, the parties agree that Rutkowski received notice of his suspension and that he was given an opportunity to speak in his defense at a hearing. The parties disagree, though, on whether Rutkowski's amended complaint contains sufficient factual allegations to support his claim that the Board acted maliciously, arbitrarily, and in bad faith.

**{¶21}** Bad faith, "'although not susceptible of concrete definition,'" has been defined in this court as a "'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *Farmers Ins. of Columbus, Inc. v. Lister*, 2006-Ohio-142, ¶ 69 (5th Dist.), quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).

**{¶22}** Notably, of course, Ohio is a notice-pleading state, and so "a plaintiff is not required to prove his or her case at the pleading stage." *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144–145 (1991). Civil Rule 8(A) requires only "a short and plain statement of the claim showing that the party is entitled to relief."

**{¶23}** When considering, under Civil Rule 12(B)(6), a motion to dismiss for failure to state a claim upon which relief can be granted, a court determines whether, based on the allegations in the pleading, the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc*., 42 Ohio St.2d 242, 245 (1975). All factual allegations in the pleading must be taken as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Unsupported conclusions in a pleading, however, are not considered true and are not sufficient to withstand a motion to dismiss. *Armatas v. Haws*, 2018-Ohio-1371, ¶ 17 (5th Dist.) citing *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324 (1989). We review anew a trial court's judgment granting a motion to dismiss without deference to that judgment. *Armatas v. Aultman Hospital*, 2022-Ohio-4376, ¶ 11 (5th Dist.).

**{¶24}** Rutkowski's amended complaint uses the terms "arbitrary" and "malicious" to describe the Board's actions against him, and he alleges that his suspension from

membership in the USPSA was the result of "bad faith" on the part of that organization and its Board.

**{¶25}** Rutkowski's amended complaint also includes some factual allegations in support of his claims. Paragraphs 45 through 49 of the amended complaint allege that the Board "actively encouraged" USPSA members to violate Colorado's magazine-capacity restriction, which — according to Rutkowski — prompted an event sponsor to cancel its support for the Grand Junction competition. The Board then set out, Rutkowski says, to punish him and other USPSA members who had drawn attention to what he describes as the USPSA's "disregard of the law" in Colorado.

**{¶26}** Ohio courts, in other contexts, have found that in-the-complaint allegations of bad faith can be sufficient to withstand a motion to dismiss. *See Parra v. Jackson*, 2021-Ohio-1188, ¶ 29 (8th Dist.) (concluding that a "dismissal would be premature at this stage of the proceedings" when allegations of malice, bad faith, and wanton or reckless conduct on the part of the defendants were made in a case involving the tort of intentional infliction of emotional distress); *Schaad v. Buckeye Valley Local School Dist. Bd. of Edn.*, 2016-Ohio-569, ¶ 9, 28 (5th Dist.) (concluding, in a case involving the torts of unauthorized disclosure of nonpublic medical information and invasion of privacy, that a motion for judgment on the pleadings was properly denied where the complaint alleged that a school principal "acted in bad faith or in a malicious, wanton, or reckless" manner, and noting that "issues regarding whether an actor's conduct was malicious, wanton, reckless, or in bad faith are generally for the jury to decide"). *See also* Civ.R. 9(B) (while claims of fraud or mistake "shall be stated with particularity," averments of "[m]alice, intent, knowledge, and other condition[s] of mind of a person may be averred generally").

**{¶27}** Taking the factual allegations in Rutkowski's amended complaint as true and drawing all reasonable inferences in Rutkowski's favor, we conclude that he might be able to prove a set of facts that would entitle him to recovery on his wrongful-suspension claim. His amended complaint sufficiently alleges that the bad-faith exception to the general rule of judicial non-interference with voluntary associations is applicable here. His first assignment of error is sustained.

## Rutkowski's Wrongful-Suspension Claim is Not Moot

**{¶28}** In his second assignment of error, Rutkowski argues that the trial court erred in concluding that his claim is moot. The trial court found, under Civil Rule 12(B)(1), that it lacked jurisdiction to hear Rutkowski's complaint based on mootness grounds. In reaching that result, the trial court emphasized that Rutkowski's USPSA membership was reinstated in October 2023.

**{¶29}** "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9. Consequently, if the parties "'lack a legally cognizable interest in the outcome'" of the dispute, the case is moot. *Id.*, quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "A case is moot when it involves no actual, genuine controversy, the decision of which can definitely affect existing legal relations." *AKP Properties, LLC v. Rutledge*, 2018-Ohio-5309, ¶ 14 (5th Dist.).

**{¶30}** We conclude that a live controversy exists between the parties as to Rutkowski's claim for monetary damages because monetary damages can be an available remedy for a wrongly suspended member of a voluntary association. *See, e.g., Wedemeyer*, 2010-Ohio-1502, at ¶ 34 (3d Dist.) ("A member of a voluntary association

who was expelled without due process may be awarded damages for the wrongful expulsion"); *Anderson Hills*, 19 Ohio App.3d at 137 ("We therefore hold that appellants were wrongfully expelled from membership . . . and that liability for damages may be imposed as a remedy").

**{¶31}** To be sure, the USPSA and the Board argue that Rutkowski's request for monetary damages is vague, with little said about it in the amended complaint beyond an allegation that Rutkowski has suffered economic damages exceeding $25,000. Yet the redress available to the USPSA and the Board in the face of that barebones allegation lies, of course, not in the dismissal of the complaint but rather through a request in the trial court for a more definite statement. *See* Civ.R. 12(E) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a definite statement before interposing his responsive pleading.").

**{¶32}** We also find, after reviewing the record, that Rutkowski's request for injunctive relief is not moot because his now-concluded suspension continues to affect his membership in the USPSA. Rutkowski was suspended under Article 4.13 of the USPSA's bylaws, which provides that any USPSA member may be suspended if the Board "determine[s] that the member has, or is likely to, by acts or omissions bring discredit to the [USPSA]."

**{¶33}** A USPSA member who is suspended for a one-year period under that Article faces consequences that persist even after reinstatement. Article 6 of the USPSA bylaws, for example, sets the eligibility requirements for people who seek to become the president of the USPSA as well as those who seek election to the board of directors.

Article 6.1(x) — governing the election of the president — states that "[m]embers subject to discipline under Article 4.13 shall be ineligible to hold office for five years after the disposition of the disciplinary action."  Article 6.2(ix) — governing the election of board members — states, too, that "[m]embers subject to discipline under Article 4.13 shall be ineligible to hold office for five years after the disposition of the disciplinary action."

{¶34} In short, Rutkowski's suspension from the USPSA in 2022 and 2023 continues to limit his ability to pursue leadership posts in that organization.  Were he to prevail on his wrongful-suspension claim, both monetary compensation and injunctive relief could be available remedies for him.  Rutkowski's lawsuit is not moot, and his second assignment of error is accordingly sustained.

{¶35} The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

**{¶36}** We express no opinion about the adequacy or appropriateness of any notice or opportunity for a hearing that the defendants may have afforded to Rutkowski. Any matters encompassed by the one claim — wrongful suspension — at issue in this case remain unresolved in light of our decision to remand the case for further trial-court proceedings on that one issue.

By: Gormley, J.

King, P.J. and

Montgomery, J. concur.